**Carolyn McDOWELL, et al., Plaintiff,**

v.

**Richard B. CHENEY, et al.,
Defendants.**

**Civ. No. 84–482–2–MAC(DF).**

United States District Court,
M.D. Georgia,
Macon Division.

July 28, 1989.

Robert E. Bergman, Warner Robins, Ga., for plaintiff.

Frank L. Butler, III, Asst. U.S. Atty., Macon, Ga., for defendants.

FITZPATRICK, District Judge.

Plaintiffs Carolyn and D.C. McDowell filed the above-referenced action alleging violations of 42 U.S.C.A. § 2000e–16 (Title VII), 5 U.S.C.A. § 552a (Federal Privacy Act), 5 U.S.C.A. § 551 et seq. (Administrative Procedure Act), 42 U.S.C.A. § 1985(3), the fourth, fifth, and fourteenth amendments, and various provisions of the statutory and common law of Georgia. Defendants have filed a Motion for Summary Judgment as to all claims raised by the McDowells. The court has fully considered the arguments of the parties, as well as the relevant statutory and case law, and is in a position to rule on the Defendants' Motion. Before issuing its ruling, however, the court will give a brief overview of the history of this litigation.

## I. INTRODUCTION

This lawsuit was originally filed in December of 1984. On February 8, 1985, the McDowells filed an Amended Complaint in which they requested injunctive relief, attorney's fees, and monetary damages in an amount that exceeded $25 million. In

March of 1985, the Defendants filed a Motion to Dismiss. After receiving the Motion, Judge Owens, who was presiding over the case at that time, instructed the Defendants to convert their Motion to Dismiss into a Motion for Summary Judgment.

This case, including the Defendants' Motion, was transferred to the undersigned in January of 1986. In December of 1987, the court held a status conference in this matter. At the December conference, the court learned that the McDowells' former counsel had withdrawn from the case, and that new counsel had been retained. The McDowells' new counsel represented to the court that he planned to significantly narrow the issues in this case by filing a second amended complaint. Specifically, the McDowells' attorney stated that he planned to drop the three constitutional claims, the Administrative Procedure Act claim, and three of the six common law tort claims. Based on this representation, the court decided to defer a ruling on the Defendants' Motion.

Several events have occurred since the December status conference. First, the attorney who stated that he would drop certain claims has withdrawn from the case. Consequently, a second amended complaint was never filed, and all fourteen of the McDowells' original claims remain in this suit. The McDowells, however, have been able to retain new counsel to represent them in this matter. Second, certain Defendants have been dismissed from the case. Of the original named Defendants, the only ones remaining are Richard B. Cheney, who is being sued in his official capacity as the Secretary of Defense, Donald B. Rice, who is being sued in his official capacity as Secretary of the Air Force, and several "unnamed" Defendants.[1] And finally, there have been significant developments in the law since the filing of the Defendants' Motion, including the passage of the Federal Employees Liability Reform and Tort Compensation Act of 1988 (hereinafter the Liability Reform Act or the 1988 Act).

As noted above, the Defendants Motion for Summary Judgment is aimed at every claim raised by the McDowells in their Amended Complaint. Both sides have fully briefed the issues involved in this case and have supplemented the file with additional argument as necessary. After carefully considering all of the submissions of the parties, the court issues its ruling as follows.

## II. BACKGROUND

Plaintiff Carolyn McDowell began her employment with the United States Air Force (USAF) in 1968 as a GS–9 operating accountant. At all times relevant to this suit, Mrs. McDowell was a civilian employee of the United States Air Force Reserve. By 1979, Mrs. McDowell had progressed to a GS–12 pricing and financial analyst position at the Warner Robins Air Force Base in Warner Robins, Georgia. She worked at the Base in Warner Robins through 1985. Plaintiff D.C. McDowell is Mrs. McDowell's husband.

Mrs. McDowell claims that in February of 1979, she was wrongfully denied a GS–1102–13 promotion because of her sex. She also claims that on January 2, 1980, and on March 7, 1980, she was discriminated against because of her sex when she was given unjustifiably low supervisory appraisal ratings.

In her Amended Complaint, Mrs. McDowell also states that during the early part of 1980, she became aware of cost overruns and pricing irregularities in certain weapons systems contracts involving the USAF. On June 1, 1980, and again on June 20, 1980, Mrs. McDowell complained about the contract irregularities to her supervisor, Mr. Lester Carter. Mrs. McDowell alleges that she was the victim of sexual harass-

1. The McDowells originally sued Casper Weinberger in his official capacity as Secretary of Defense, and Edward C. Aldridge, Jr. in his official capacity as Secretary of the Air Force. Richard B. Cheney is the current Secretary of Defense, and should be substituted for Mr. Weinberger pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure. In addition, Donald B. Rice is the current Secretary of the Air Force, and should be substituted for Mr. Aldridge pursuant to the same Rule.

ment during both of her meetings with Mr. Carter.

On October 7, 1980, Mrs. McDowell filed a written complaint against the USAF alleging sex discrimination in the denial of a promotion and in the receipt of low supervisory appraisal ratings. The October 7th complaint also alleged unlawful sexual harassment by officials and agents of the USAF. On October 29, 1980, the USAF, through its Director of Equal Employment Opportunity, issued a decision in which it found that Mrs. McDowell had been the victim of sex discrimination and sexual harassment. In a separate decision dated May 24, 1982, the Equal Employment Opportunity Commission (EEOC) also concluded that Mrs. McDowell had been discriminated against because of her sex in the receipt of low supervisory appraisals. Mrs. McDowell contends that the Defendants have refused to implement the remedies set forth in the EEOC decision, including appropriate disciplinary action against Mr. Carter.

In the fall of 1980, Mrs. McDowell asked for and received a transfer to an equivalent position with the Air Force Reserve (AFRES). Apparently, Mrs. McDowell requested the transfer to remove herself from Mr. Carter's supervision. After her transfer, Mrs. McDowell continued to complain both orally and in writing about irregularities in weapons systems contracts involving the USAF.

In April of 1983, Mrs. McDowell applied for a GS–510–13 promotion to the position of Accounting Officer at the Robins Air Force Base. Mrs. McDowell contends that she was fully qualified for the promotion. Following a lengthy application period, the position was given to a male applicant, Larry Collier. Mrs. McDowell alleges that she was denied the promotion because of her sex.

On October 30, 1983, Mrs. McDowell filed another written complaint with the USAF alleging sex discrimination in connection with the denial of a promotion to the Accounting Officer position. The October 30th complaint also alleged sex discrimination in the denial of other promotions, as well as continuing reprisals and retaliation because of her prior complaints of sex discrimination and harassment.

On November 15, 1983, the Defendants accepted Mrs. McDowell's October 30th complaint as timely filed. Mrs. McDowell contends that the Defendants have failed to process or consider the claims set forth in her October 30th complaint. In addition, Mrs. McDowell alleges that since she filed her complaint, she has been the victim of a continuing pattern of sex discrimination. In particular, Mrs. McDowell states that she has been denied promotions for which she is fully qualified. She also contends that she continues to be harassed because of her disclosure of irregularities in various weapons systems projects.

As part of this alleged harassment, Mrs. McDowell states that the Defendants have altered, tampered with, and removed information pertaining to her from the Defendants' job base computer banks and from her own personnel records. Mrs. McDowell further contends that the Defendants have failed to maintain accurate and complete records sufficient to assure fairness in any determination relating to possible promotions. Mrs. McDowell states that these and other acts are part of an invalid promotion evaluation pattern that has prohibited her from receiving the promotions she deserves.

## III. DISCUSSION

As noted in the introductory section of this Order, Mr. and Mrs. McDowell have asserted fourteen different federal and state law claims. For purposes of the Defendants' Motion for Summary Judgment, the claims can be grouped together as follows: (1) Counts One and Two allege discriminatory failure to promote and retaliation in violation of Title VII; (2) Count Three alleges unlawful tampering with Mrs. McDowell's personnel records in violation of the Federal Privacy Act; (3) Counts Four, Five, and Six allege violations of the fourth, fifth, and fourteenth amendments; (4) Count Seven alleges a conspiracy to deprive Mrs. McDowell of certain rights guaranteed to her in violation of 42 U.S.

C.A. § 1985(3); (5) Count Eight alleges a refusal to correct personnel records in violation of the Administrative Procedure Act; and (6) Counts Nine through Fourteen allege various violations of the statutory and common law of Georgia. The merits of each group of claims are considered below.

## A. *Title VII Claims*

Mrs. McDowell asserts two Title VII claims in Counts One and Two of her Amended Complaint. In Count One she alleges that she was denied certain promotions because of her sex. In Count Two she claims that the Defendants unlawfully retaliated against her after she filed sex discrimination charges against the Air Force in October of 1980 and again in October of 1983. Defendants have raised a timeliness defense and an exhaustion defense to the Title VII claims.

Section 717 of Title VII protects federal employees from discrimination in the workplace. 42 U.S.C.A. § 2000e–16 (1981). Before bringing an employment discrimination claim in federal court, however, the employee must seek redress through the proper administrative channels. *Id. Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976) ("[i]nitially, the complainant must seek relief in the agency that has allegedly discriminated against [her]"). Therefore, the employee must *exhaust* those administrative remedies available to her before she may pursue her discrimination claims in a federal lawsuit. *Id.* at 832, 96 S.Ct. at 1967.

In determining whether Mrs. McDowell has exhausted the administrative remedies available to her, the court must retrace those events that led to the filing of her discrimination claims under Title VII. On July 22, 1983, Mrs. McDowell met with Watson Fluellen, an EEO counselor, to discuss certain complaints she had concerning alleged discrimination. A meeting with an EEO counselor is a necessary prerequisite to the filing of a discrimination complaint against a federal agency. *See* 29 C.F.R. § 1613.214 (1988). During her interview

with Mr. Fluellen, Mrs. McDowell asserted four separate allegations: (1) that she was denied promotion to a GM–510–13 position because she had filed previous EEO complaints; (2) that the Promotion Evaluation Patterns (PEPs) had a disparate impact on females; (3) that the PEPs for GM–510–13 positions had been deliberately drawn to exclude her from consideration; and (4) that documents had been removed from her personnel folder in retaliation for her past involvement in protected activities. *See* EEO Counselor's Report, Complaint Number 1779–073–83, p. 3, (attached as Exhibit 3 to Defendants' Reply Brief dated May 30, 1985) (hereinafter Counselor's Report).

After investigating Mrs. McDowell's claims, Mr. Fluellen found against Mrs. McDowell on all issues except for her claim that the PEPs had a disparate impact on females. *See* Counselor's Report, p. 3. Mr. Fluellen made no finding on the disparate impact claim, stating that the Robins Air Force Base had no authority to correct the PEPs since they were prepared by the Office of Civilian Personnel Operations in Texas. Mr. Fluellen then sent Mrs. McDowell a "Notice of Final Interview with Counselor," informing her that she had 15 days to file a complaint of discrimination with the Chief EEO Counselor or with any other federal official listed in the Notice.[2] The 15–day time limit for filing a complaint of discrimination is prescribed by 29 C.F.R. §§ 1613.213(a) and 1613.214(a)(1)(ii) (1988). Mrs. McDowell acknowledged receipt of the Final Notice on August 16, 1983.

In the Counselor's Report, which was prepared after the Notice of Final Interview had been sent to Mrs. McDowell, Mr. Fluellen stated that Mrs. McDowell had accepted his conclusions concerning her allegations of discrimination. Counselor's Report, p. 4. He also stated, however, that Mrs. McDowell expressed a desire to file a complaint against the Secretary of the Air Force in connection with the disparate impact issue. *Id.* The Report further stated that Mr. Fluellen had given Mrs. McDowell her Final Notice on August 16th, and had informed her that any complaint she

---

**2.** The Final Notice is attached as Exhibit 2 to    Defendants' Reply Brief dated May 30, 1985.

wished to pursue concerning the "unresolved issue" had to be timely filed with the correct agency. *Id.*

On August 30, 1983, Mrs. McDowell filed a formal complaint of discrimination against the Secretary of the Air Force. *See* Letter from Carolyn McDowell to the Secretary of the Air Force, dated Aug. 30, 1983 (attached as Exhibit 5 to Defendants' Reply Brief dated May 30, 1985). In her August 30th complaint, Mrs. McDowell raised only the disparate impact issue involving the PEPs. When Mrs. McDowell filed her complaint, Mr. Fluellen entered a memo in the record indicating that Mrs. McDowell had elected to pursue only the disparate impact issue since her other allegations had been resolved to her satisfaction. Memo for Record, Disposition of Complaint Number 1779–073–83, dated Aug. 30, 1983 (attached as Exhibit 4 to Defendants' Reply Brief dated May 30, 1985).

The EEO office at Robins Air Force Base sent Mrs. McDowell's August 30th complaint to the EEO office at Randolph Air Base, Texas. The complaint was sent to Randolph since the PEPs for GM–510–13 positions were created and administered by the Office of Civilian Personnel Operations which was located at the Randolph Air Force Base. On October 17, 1983, the Chief EEO Counselor at Randolph sent Mrs. McDowell a letter informing her that since "counseling" on the disparate impact issue had not been completed at the Robins Air Force Base, her complaint had been remanded to an EEO counselor at Randolph for that purpose. Letter from Baldemar Nichols to Carolyn McDowell, dated Oct. 17, 1983 (attached as Exhibit 7 to Defendants' Reply Brief dated May 30, 1985). In his letter, Mr. Nichols also informed Mrs. McDowell that "counseling" had now been completed on the disparate impact issue, that the EEO counselor had determined that the PEPs did not have a disparate impact on females applying for GM–510–13 positions, that a Notice of Final Interview with Counselor recording the counselor's determination was being sent with the letter, and that she had 15 days from receipt of the letter to file a formal complaint of discrimination on the disparate impact issue. *Id.*

The result of Mr. Nichols' letter was to inform Mrs. McDowell that her August 30th complaint had not been filed as a formal complaint of discrimination since the disparate impact issue had not been "counseled" and brought to a final determination pursuant to 29 C.F.R. § 1613.213. Following receipt of the August 30th complaint, however, the EEO office at Randolph investigated Mrs. McDowell's disparate impact claim and determined that it was without merit. At that point, Mrs. McDowell was informed that "counseling" on the disparate impact claim had been completed, and that she could now file a formal complaint of discrimination on the disparate impact issue.

On October 30, 1983, Mrs. McDowell filed another complaint of discrimination against the Secretary of the Air Force. In this complaint, however, Mrs. McDowell raised much more than just the disparate impact claim. In addition to the PEP claim, she alleged: (1) that her experience had not been properly recorded on her personnel records; (2) that the PEPs for GM–510–13 positions were deliberately drawn to exclude her from consideration because of her previous complaints against the Air Force; and (3) that a 1982 Air Force decision, that had imposed certain remedies following a finding that Mrs. McDowell had been a victim of discrimination, had never been properly implemented. *See* Letter from Carolyn McDowell to the Secretary of the Air Force, dated Oct. 30, 1983 (attached as Exhibit 8 to Defendants' Reply Brief dated May 30, 1985). On November 28, 1983, the Air Force sent Mrs. McDowell a letter informing her that her October 30th complaint had been accepted for investigation. Throughout the next several months, little progress was made in investigating these claims. Then, on September 14, 1984, an EEO counselor at Robins wrote a letter to Mrs. McDowell and others clarifying the issues that had been asserted in the October 30th complaint. On December 5, 1984, before a final ruling had been issued

in connection with her October 30th complaint, Mrs. McDowell filed the instant suit.

Defendants argue that the only Title VII claim that has been exhausted and can be pursued in this court is the disparate impact claim concerning the PEPs. Defendants contend that the other three Title VII claims raised by Mrs. McDowell in her July 22nd meeting with Mr. Fluellen cannot be asserted here since they were not raised in a formal complaint of discrimination within 15 days of Mr. Fluellen's adverse ruling. In addition, Defendants argue that any new claims asserted in the October 30th complaint cannot be pursued in this action since they have not been "counseled" pursuant to 29 C.F.R. § 1613.213.

■ The EEOC has promulgated certain regulations that are to be followed when federal employees wish to pursue complaints of employment discrimination. First, the employee must bring her claim to the attention of an EEO counselor within 30 days of the alleged discriminatory conduct. 29 C.F.R. § 1613.213(a) (1988). The counselor then investigates the charge and attempts to resolve the matter through informal methods. *Id.* If the matter cannot be informally resolved, the counselor conducts a final interview with the employee and informs the employee in writing that she may file a complaint of discrimination with the appropriate official within 15 days of receipt of the final notice. *Id.* The formal written complaint must encompass only those claims of discrimination that have been "counseled" within the meaning of 29 C.F.R. § 1613.213. *Quillen v. United States Postal Serv.,* 564 F.Supp. 314, 318 (E.D.Mich.1983). After a complaint is filed, the employee is entitled to a formal investigation, a hearing, and a recommended decision concerning her charge. 29 C.F.R. §§ 1613.216–18 (1988). If the complaint is denied, the employee may file suit in a district court within 30 days of the denial. 42 U.S.C.A. § 2000e–16(c) (1981).

There is no dispute that on July 22, 1983, Mrs. McDowell contacted an EEO counselor concerning four charges of discrimination. It appears from Mr. Fluellen's Memo that three of these charges, denial of pro-

motion, PEPs that discriminated solely against her, and retaliatory removal of documents, were resolved by the counselor to Mrs. McDowell's satisfaction. Mrs. McDowell's charge of disparate impact, however, remained unresolved. On August 16, 1983, the EEO counselor informed Mrs. McDowell that she could file a complaint of discrimination within 15 days. She filed a timely complaint, but raised only the disparate impact issue. Mrs. McDowell did not mention the three claims that had been resolved until she reasserted them in her October 30th complaint of discrimination, more than 60 days after the counselor's initial final notice was given.

The applicable Regulation provides as follows:

> The agency may accept the complaint for processing in accordance with this subpart only if:
>
> &ast;    &ast;    &ast;    &ast;    &ast;    &ast;
>
> (ii) The complainant or representative submitted the written complaint to an appropriate official within 15 calendar days after the date of receipt of the notice of the right to file a complaint.

29 C.F.R. § 1613.214(a)(ii) (1988). The question thus becomes whether Mrs. McDowell can bring her claims under Title VII in this court if she failed to assert such claims in a timely-filed complaint of discrimination.

Defendants cite *Quillen, supra,* in support of their position that the Title VII claims must be dismissed. The plaintiff in *Quillen,* a postal service employee, contacted an EEO counselor in February of 1980 concerning charges of sexual harassment and discriminatory discharge. The counselor found against the plaintiff, and on March 27, 1980, conducted a final interview with the plaintiff in which he informed her that she could file a formal written complaint of discrimination. For some reason, the plaintiff chose not to pursue her claims by filing the formal complaint. In May of 1981, the plaintiff filed a second charge claiming discriminatory denial of reinstatement. The counselor was also unable to resolve this matter, and on July 15, 1981, the plaintiff filed a formal written com-

plaint. Subsequently, the plaintiff filed her lawsuit pursuant to Title VII alleging sexual harassment, discriminatory discharge, and discriminatory failure to reinstate her to her former position.

The district court granted summary judgment in favor of the defendants on the plaintiff's claims of sexual harassment and discriminatory discharge. Specifically, the court found that the plaintiff was barred from suing on the harassment and discharge claims since she had not raised those claims in a formal complaint of discrimination within fifteen days of her final interview with the EEO counselor on March 27, 1980. *Id.* at 320. Simply stated, the district court prohibited the plaintiff from pursuing any claim in her Title VII action that had not first been exhausted in the administrative process.

Counts One and Two of Mrs. McDowell's Amended Complaint allege discriminatory failure to promote and retaliation. These claims were raised during Mrs. McDowell's initial meeting with Mr. Fluellen on July 22, 1983. After Mr. Fluellen found against Mrs. McDowell on these claims, however, Mrs. McDowell chose not to assert the claims in a timely complaint of discrimination. Instead, Mrs. McDowell asserted only the disparate impact claim in her August 30th complaint.

It would appear at first blush that the *Quillen* decision is directly on point with the case *sub judice,* and that Mrs. McDowell's promotion and retaliation claims should be dismissed since she did not raise these claims in a formal written complaint of discrimination within 15 days of her final interview with Mr. Fluellen. Absent from the Defendants' discussion of *Quillen,* however, is the fact that the *Quillen* court found that the doctrine of continuous discrimination applies to actions brought by federal employees under 42 U.S.C.A. § 2000e–16. *Id.* at 319. As noted in *Quillen,* "the courts have held that a person challenging continuous discriminatory conduct must only show that one of the discriminatory acts occurred within the applicable time limitations." *Id.* (citations omitted). The court further noted that the doc-

trine applies only to continuous acts of discrimination, and not to discrete acts of discrimination. *Id.* Although the *Quillen* court noted that this doctrine applied to actions under section 2000e–16, the court found that the plaintiff's discharge in February of 1980, and her denial of reinstatement in April of 1981, were "separate and discrete acts." *Id.* at 320. Since the plaintiff's claims in *Quillen* involved separate and discrete acts, the court refused to apply the doctrine of continuous discrimination to that case.

Mrs. McDowell's charges, however, are different from those asserted by the plaintiff in *Quillen.* In Count One of her Amended Complaint, Mrs. McDowell alleges that she has been denied promotions on more than one occasion, and that the "Defendants' *continuing* failure to promote her throughout her employment ... has been due to her sex." Amended Complaint, ¶ 27. Moreover, in Count Two, she alleges that "[t]he unlawful acts of reprisal have *continued* from the initial filing of the two Complaints [of discrimination], are presently *continuing,* and are violations of Section 717 of Title VII." Amended Complaint, ¶ 33.

This court finds that Mrs. McDowell's Amended Complaint adequately alleges a pattern of continuing discrimination against her. At this point, there are material factual disputes concerning the actions of the Defendants. Only additional discovery will reveal whether the Defendants were involved in a pattern of discrimination against Mrs. McDowell, and whether the doctrine of continuous discrimination should be applied in this case. Although Mrs. McDowell did not comply with the strict time requirements of 29 C.F.R. § 1613.214(a)(ii) in connection with her promotion and retaliation claims, she did raise these claims in a formal complaint of discrimination on October 30, 1983. Moreover, her retaliation and promotion claims had been fully "counseled" at the time she raised them on October 30th, since she had raised them during her July 22nd meeting with Mr. Fluellen. Under the doctrine of continuous discrimination, Mrs. McDowell need only show that one of the continuous

acts of discrimination occurred within the 15–day time period immediately preceding her formal complaint of discrimination. *See Clark v. Olinkraft, Inc.,* 556 F.2d 1219, 1221–22, (5th Cir.1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978). Assuming Mrs. McDowell can make such a showing, her promotion and retaliation claims would not be barred for her failure to exhaust available administrative remedies.

To summarize, the court finds that Mrs. McDowell will be allowed to pursue her Title VII claims since she has adequately alleged that she was the victim of a continuous pattern of discrimination. If, however, additional discovery reveals that Mrs. McDowell was not the victim of a pattern of discrimination, or that the doctrine of continuous discrimination should not be applied in this case, then the Defendants will be allowed to reassert their Motion for Summary Judgment on the Title VII claims.

For the reasons stated above, the court hereby DENIES summary judgment to the Defendants on Counts One and Two of the Amended Complaint.[3]

B. *The Constitutional Claims*

In Count Four of her Amended Complaint, Mrs. McDowell claims that the Defendants have altered, tampered with, and removed information from her file, and that by such actions, the Defendants have violated certain rights guaranteed to her by the Due Process Clause of the fifth amendment. In Count Five, Mrs. McDowell contends that the Defendants' failure to process her complaints concerning cost over-

runs and pricing irregularities has resulted in a separate violation of her fifth amendment due process rights. And in Count Six, Mrs. McDowell alleges that her discovery and disclosure of the weapons contract irregularities has subjected her to physical and verbal harassment, intimidation, and employment discrimination, all in violation of those rights guaranteed to her by the fourth, fifth, and fourteenth amendments to the constitution.[4]

Mrs. McDowell's constitutional claims are based on *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), a case in which the Supreme Court held that the fourth amendment of the Constitution provided a private right of action for damages against federal officials. In *Bivens,* the plaintiff alleged that federal agents arrested him and searched his home without a warrant or probable cause. The plaintiff further alleged that the actions of the defendants had caused him great humiliation, embarrassment, and mental suffering. In his suit for damages, the plaintiff claimed that the fourth amendment provided an independent basis for relief. The Supreme Court upheld the sufficiency of the plaintiff's complaint, and allowed him to use the fourth amendment as a channel for suing the federal agents. *Id.* at 397, 91 S.Ct. at 2005.

*Bivens* did not hold, however, that all claims asserted under the Constitution can be pursued in federal court. Indeed, as recognized by the Eleventh Circuit, *"Bivens* actions are restricted to the vindication of the constitutional rights of a victim *only* when no equally effective remedy is available." *Wells v. Federal Aviation Ad-*

---

3. Mrs. McDowell also alleges that her Title VII claims should not be dismissed for failure to exhaust administrative remedies because of the doctrine of equitable tolling. In light of its ruling on the Title VII claims, however, the court has found it unnecessary to consider whether the doctrine of equitable tolling should be applied in this case. If the Defendants are allowed, at some later date, to reassert their Motion for Summary Judgment on the Title VII claims, then the court will carefully consider Mrs. McDowell's arguments concerning equitable tolling, and *if necessary, make a ruling* on the equitable tolling issue.

4. Presumably, Mrs. McDowell is asserting her constitutional claims against the "unnamed individual" Defendants since government officers cannot be sued in a *Bivens* action in their official capacity. *See Holloman v. Watt,* 708 F.2d 1399, 1401–02 (9th Cir.1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984). This conclusion is consistent with the well-established doctrine that *Bivens* actions can be brought only against individual federal officials, and not against the United States. · *McCollum v. Bolger,* 794 F.2d 602, 608 (11th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987).

*min.*, 755 F.2d 804, 809 (11th Cir.1985) (emphasis added). Therefore, if a plaintiff has other adequate remedial mechanisms available to her, then she will be prohibited from pursuing a *Bivens* action for an alleged constitutional violation. *See Schweiker v. Chilicky,* — U.S. —, —, 108 S.Ct. 2460, 2467–68, 101 L.Ed.2d 370 (1988).

The Supreme Court has consistently refused to create a *Bivens* action where other meaningful remedies were available to the plaintiff. The decision most applicable to the facts of the instant case is *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). The *Bush* court held that a federal employee could not maintain a cause of action against his supervisor for a violation of the employee's first amendment rights. *Id.* at 390, 103 S.Ct. at 2417. In *Bush,* the plaintiff had made a number of public statements to the media that were critical of the federal agency for which he worked. As a result of these statements, the plaintiff was demoted. While his administrative appeal was pending, the plaintiff filed an action against his supervisor seeking damages for "retaliatory demotion" in violation of his first amendment rights. The Supreme Court concluded that the plaintiff could not assert a *Bivens* claim under the first amendment since the plaintiff's employment relationship with the federal government was governed by a comprehensive remedial scheme, the federal civil service laws. *Id.* at 388–89, 103 S.Ct. at 2416–17. In *Bush,* the Court refused to create a *Bivens* remedy even though it assumed a first amendment violation had occurred and acknowledged that the existing remedies did not provide *complete* relief for the plaintiff. *Id.* at 388, 103 S.Ct. at 2417 (emphasis added).

In the instant case, Mrs. McDowell alleges that her rights under the fourth, fifth, and fourteenth amendments were violated when the Defendants (1) tampered with information in her file, (2) failed to process her complaints, (3) subjected her to harassment, and (4) failed to promote her. As discussed in more detail below, for each one of her complaints, Mrs. McDowell possesses a meaningful remedy in the civil service laws that is separate from a *Bivens* claim under the Constitution. Thus, *Bush* and its progeny dictate that Mrs. McDowell should be precluded from pursuing a *Bivens* claim under the facts of this case.

■ First, Mrs. McDowell contends that her due process rights were violated when the Defendants altered, tampered with, and removed information from her personnel file. She also contends that her due process rights were violated when the Defendants failed to process her complaints concerning cost overruns and pricing irregularities in the weapons systems contracts. Such claims are clearly actionable under the Civil Service Reform Act of 1978 (CSRA). As noted by the Supreme Court in *Bush,*

> [f]ederal civil servants are now protected by an elaborate, comprehensive scheme that encompasses substantive provisions forbidding arbitrary action by supervisors and procedures—administrative and judicial—by which improper action may be redressed. They apply to a multitude of personnel decisions that are made daily by federal agencies.

*Id.* at 385, 103 S.Ct. at 2415. In particular, 5 C.F.R. § 771.205 allows a federal employee to file a grievance in connection with "any matter of concern or dissatisfaction relating to the employment of [the] employee ... including any matter on which an employee alleges that coercion, reprisal, or retaliation has been practiced against him or her." Moreover, under 5 U.S.C.A. § 2302, federal officials are specifically prohibited from taking a personnel action against an employee in reprisal for the employee's "whistle-blowing" activities. 5 U.S.C.A. § 2302(b)(8)(A) (Supp.1989).[5]

---

5. This Code section provides as follows:
Any employee who has authority to take ... any personnel action, shall not, with respect to such authority—

\* \* \* \* \* \*

(8) take or fail to take a personnel action with respect to any employee ... as a reprisal for—

■ Both of the due process claims raised by Mrs. McDowell in Counts Four and Five of her Amended Complaint relate to personnel actions taken against her because of her "whistle-blowing" concerning weapons systems contracts, and are, therefore, fully cognizable within the civil service grievance system. Moreover, the Air Force has its own set of Regulations that govern the type of due process claims being raised by Mrs. McDowell.[6] As noted by the Supreme Court in *Bush*, the existence of a comprehensive remedial scheme available to the plaintiff is a "special factor" that weighs heavily against the creation of a new federal remedy. *Bush*, 462 U.S. at 389, 103 S.Ct. at 2417. Because Mrs. McDowell could assert her due process claims under the CSRA, this court will not allow her to pursue a *Bivens* claim based on the fifth amendment.[7]

■ In addition to her due process claims, Mrs. McDowell alleges that her disclosure of the contracts irregularities resulted in intentional physical and verbal harassment and intimidation, as well as employment discrimination, all in violation of her fourth, fifth, and fourteenth amendment rights. As noted above, to the extent Mrs. McDowell's complaints include allegations of "coercion, reprisal, or retaliation," they are actionable under the CSRA. Moreover, Mrs. McDowell's complaints of alleged discrimination in connection with her employment are actionable only under Title VII of the Civil Rights Act of 1964. *Brown*, 425 U.S. at 835, 96 S.Ct. at 1969 (42 U.S.C.A. § 2000e–16 is the exclusive remedy for all claims of discrimination in federal employment). Consequently, since the allegations raised in Count Six of the Amended

Complaint are fully cognizable under other remedial mechanisms, Mrs. McDowell is precluded from pursuing a *Bivens* claim based on alleged violations of her fourth, fifth, and fourteenth amendment rights. The court's finding is in accord with *Spagnola v. Mathis*, 859 F.2d 223, 230 (D.C.Cir. 1988), in which the Circuit Court of Appeals for the District of Columbia refused to create a *Bivens* remedy "for civil service employees and applicants who advance constitutional challenges to federal personnel actions."

Accordingly, the court having found that Mrs. McDowell's constitutional claims are not actionable as a matter of law, summary judgment is hereby GRANTED in favor of the Defendants on Counts Four, Five, and Six of the Amended Complaint.

## C. *The Conspiracy Claim*

In Count Seven of her Amended Complaint, Mrs. McDowell alleges that the Defendants conspired to retaliate against her and to deprive her of certain rights and privileges guaranteed to her by the laws and Constitution of the United States. Simply stated, Count Seven alleges a violation of 42 U.S.C.A. § 1985(3). The Defendants contend that Mrs. McDowell has failed to state a claim under the federal conspiracy statute.

Section 1985(3) provides in pertinent part:

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may

---

A) a disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—
(i) a violation of any law, rule, or regulation, or
(ii) mismanagement, a gross waste of funds, [or] an abuse of authority....
5 U.S.C.A. § 2302(b)(8)(A) (Supp.1989).

**6.** At least one court has held that the failure of the Air Force to enforce its own regulations would not give rise to a *Bivens* claim under the fifth amendment. *Clemente v. United States*, 766 F.2d 1358, 1364 (9th Cir.1985), *cert. denied*,

474 U.S. 1101, 106 S.Ct. 881, 88 L.Ed.2d 917 (1986).

**7.** For other decisions in this Circuit in which plaintiffs were prohibited from pursuing a *Bivens* claim, *see McCollum v. Bolger*, 794 F.2d 602, 606–07 (11th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *Wells v. Fed. Aviation Admin.*, 755 F.2d 804, 809–10 (11th Cir.1985); *Hallock v. Moses*, 731 F.2d 754, 757 (11th Cir.1984); *Dynes v. Army Air Force Exch. Serv.*, 720 F.2d 1495, 1498–99 (11th Cir.1983); *Gleason v. Malcom*, 718 F.2d 1044, 1048 (11th Cir.1983).

have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A. § 1985(3) (1981). This section does not create any substantive rights, but merely provides a remedy for the deprivation of some other federally-protected right. *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 833, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983); *Great American Fed. Savings & Loan Assn. v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979).

■ Mrs. McDowell's Amended Complaint does not specify in detail those federally-protected rights upon which she is basing her section 1985 claim. The court could presume that she is claiming that the Defendants conspired to violate certain rights protected under Title VII. The case law is abundantly clear, however, that the deprivation of a right created by Title VII cannot provide the basis for a claim for relief under 42 U.S.C.A. § 1985(3). *Id.* at 378, 99 S.Ct. at 2352. Therefore, the court must look elsewhere for a federally-protected right that will provide the basis for Mrs. McDowell's conspiracy claim.

■ After carefully considering the record, it appears that Mrs. McDowell could claim that her conspiracy count is based on the alleged violation of her first amendment right to free speech. In particular, Mrs. McDowell states throughout her Amended Complaint that she was retaliated against in various ways because she "spoke out" against irregularities in certain weapons systems contracts. Assuming that her speech touched on a matter of public concern, *see Connick v. Myers,* 461 U.S. 138, 146–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), Mrs. McDowell could use the first amendment as the channel for her conspiracy claim. The first amendment would be an available channel since conspiracy claims based on alleged violations of the first amendment may be asserted

against *federal* officials as well as against those acting under color of state law. *See e.g., Spagnola v. Mathis,* 809 F.2d 16, 29 (D.C.Cir.1986), *rev'd in part on other grounds,* 859 F.2d 223 (D.C.Cir.1988); *Hobson v. Wilson,* 737 F.2d 1, 19 (D.C.Cir. 1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

Notwithstanding the fact that the Amended Complaint could be read to allege a violation of her first amendment right to free speech, the court finds that Mrs. McDowell may not pursue a claim under 42 U.S.C.A. § 1985(3). In *Spagnola, supra,* the Circuit Court of Appeals for the District of Columbia considered the identical question presented here, *i.e.,* whether an aggrieved federal employee could pursue a claim under 42 U.S.C.A. § 1985 based on an alleged violation of the employees' first amendment rights. The *Spagnola* court considered other cases in which the District of Columbia Circuit had held that enactment of the CSRA precluded actions by federal employees asserted under other federal statutes. The court then held that because the CSRA offered the employee an alternative remedy, he was precluded from asserting a conspiracy claim under section 1985. *Spagnola,* 809 F.2d at 30.

This court finds the reasoning of *Spagnola* to be persuasive. Moreover, the *Spagnola* holding is in accord with a statement in a very recent case from the Eleventh Circuit which provides that "[t]he CSRA does preempt challenges to personnel actions brought under federal law." *Broughton v. Courtney,* 861 F.2d 639, 642 (11th Cir.1988), citing *United States v. Fausto,* 484 U.S. 439, ——, 108 S.Ct. 668, 674–75, 98 L.Ed.2d 830 (1988). Finally, the court has found no other case which considered the preclusive effect of the CSRA, and then held that an aggrieved federal employee could assert a claim under 42 U.S.C.A. § 1985. For these reasons, the court will follow the holding in *Spagnola* and dismiss Mrs. McDowell's conspiracy claim under 42 U.S.C.A. § 1985(3).[8]

---

8. Assuming the enactment of the CSRA did not preclude Mrs. McDowell from pursuing her claim under 42 U.S.C.A. § 1985, it is still doubtful whether she has stated a viable claim under

that statute. In *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), the Supreme Court held that section 1985(3) requires "some racial, or perhaps other-

Accordingly, summary judgment is hereby GRANTED in favor of the Defendants on Count Seven of the Amended Complaint.

### D. The Privacy Act Claim

■ In Count Three of her Amended Complaint, Mrs. McDowell alleges that the Defendants failed to accurately maintain her personnel records in violation of the Privacy Act, 5 U.S.C.A. § 552a. Mrs. McDowell contends that the Defendants' actions, which included alleged tampering with her records, have caused her to be passed over for certain opportunities and benefits that otherwise would have been available to her. Specifically, Mrs. McDowell states that she has not been considered for promotion to a GS–13 position, even though she is qualified for such promotion. The Defendants argue that the Privacy Act claim must be dismissed for two reasons: (1) Mrs. McDowell failed to name the proper party-defendant for a Privacy Act claim; and (2) Mrs. McDowell failed to bring her Privacy Act claim within the two-year period of limitations set forth in section 552a.

The Privacy Act sets forth those standards that must be adhered to when a federal agency maintains records on its employees. 5 U.S.C.A. § 552a (1977 & Supp. 1989). Specifically, the Act allows an employee to bring suit whenever the agency fails to maintain employment records "with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to ...

benefits to the individual...." *Id.* at § 552a(g)(1)(C). Any claim under the Act must be brought against the "agency," and not against individual officers or employees. *See Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir.1987). Moreover, the claim must be brought "within two years from the date on which the cause of action arises." *Id.* at § 552a(g)(1), (5).

The court need not spend a great deal of time discussing the Privacy Act claim or the merits of the defenses raised in the Motion for Summary Judgment. The alleged violation of the Privacy Act involves a nonconstitutional claim asserted under a federal statute. For the same reasons stated in section IIIC of this Order, the court finds that the remedial scheme available under the CSRA prohibits Mrs. McDowell from asserting her Privacy Act claim. As held in *Spagnola, supra,* "the CSRA precludes resort to other statutory schemes for aggrieved federal employees raising nonconstitutional claims against their employers." *Spagnola,* 809 F.2d at 30; *see also Broughton,* 861 F.2d at 642 ("[t]he CSRA does preempt challenges to personnel actions brought under federal law").[9]

Accordingly, the court hereby GRANTS summary judgment to the Defendants on Count Three of the Amended Complaint.

### E. The Administrative Procedure Act Claim

In Count Eight of her Amended Complaint, Mrs. McDowell alleges that certain

---

wise class-based, invidiously discriminatory animus behind the conspirators' action." That holding was reaffirmed in *Scott, supra,* in which the Court noted:

> it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause.... The predominant purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters.

*Scott,* 463 U.S. at 836, 103 S.Ct. at 3360. The "class-based animus" requirement certainly seems to be absent in Mrs. McDowell's conspiracy claim. Indeed, as one court has noted, "[i]f the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement." *Hauptmann v.*

*Wilentz,* 570 F.Supp. 351, 386 (D.N.J.1983), *aff'd,* 770 F.2d 1070 (1985).

**9.** Although *Spagnola* and *Broughton* both hold that the CSRA preempts challenges to personnel actions brought under federal law, the CSRA, by its own terms, does not preempt an action brought under Title VII. The relevant provision of the CSRA provides as follows:

> This section shall not be construed to extinguish ... any right or remedy available to any employee or applicant for employment in the civil service under—
>
> (1) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin;
>
> *     *     *     *     *     *

5 U.S.C.A. § 2302(d)(1) (Supp.1989).

actions of the Defendants, including the Defendants' refusal to correct her files and computer ranking, have resulted in a violation of the Administrative Procedure Act, (APA) 5 U.S.C.A. §§ 551, 701 *et seq*. The Defendants have raised both an immunity defense and an exhaustion defense to Mrs. McDowell's APA claim. The court, however, will focus on the Defendants' argument that Mrs. McDowell may not bring a claim under the APA since other remedies were available to her.

The general purpose of the APA is to allow an individual who has been adversely affected by the action of a federal agency to seek judicial review of that action in federal court. 5 U.S.C.A. §§ 702–04 (1977). Only equitable relief can be granted under the APA. *Id.* Moreover, the APA is to serve as a "catch all" that can be used if no other remedial mechanism is available. *See Cape Fox Corp. v. United States*, 456 F.Supp. 784, 795 (D.Alaska 1978) ("the [APA] does not provide jurisdiction where other adequate judicial remedies are available") (footnote omitted).

█ As noted in sections IIIC and IIID of this Order, the CSRA precludes resort to other federal remedies for aggrieved federal employees. *See Broughton*, 861 F.2d at 642; *Spagnola*, 809 F.2d at 30. This same reasoning would apply to claims being asserted under the APA. In addition to *Broughton* and *Spagnola*, however, the court notes that the Fifth Circuit has squarely addressed the issue of whether the CSRA preempts an action under the APA. *Broadway v. Block*, 694 F.2d 979 (5th Cir.1982). Because it is directly on point with the issue presented in connection with Mrs. McDowell's APA claim, the court will set forth a brief discussion of the *Broadway* decision below.

In *Broadway*, the Fifth Circuit Court of Appeals considered the types of remedies that were available to a federal employee who became dissatisfied when she was reassigned to a different employment position. In *Broadway*, the court noted that the plaintiff had two remedies under the CSRA: (1) to file an administrative grievance under 5 C.F.R. § 771; or (2) to take her complaint to the Special Counsel's Office under 5 U.S.C.A. § 1206. *Id.* at 984. The court then held that since the plaintiff had available remedies under the CSRA, she was precluded from pursuing a claim under the APA. *Id.* at 986. Specifically, the court stated:

> As explained in cloying detail above, the CSRA creates an extensive scheme regulating civil service personnel decisions.... *We decline to allow an employee to circumvent this detailed scheme governing federal employer-employee relations by suing under the more general APA.* The reasoning of *Bush* in denying a constitutional right of action is applicable here, for allowing suit under the APA would likewise 'encourage aggrieved employees to bypass the statutory and administrative remedies in order to seek direct judicial relief and thereby deprive the Government of the opportunity to work out its personnel problems within the framework it has so painstakingly established.'

*Id.* (citation omitted). The decision in *Broadway* is in accord with a decision from the Circuit Court of Appeals for the District of Columbia which also held that the judicial review provisions of the APA were preempted by the enactment of the CSRA. *Carducci v. Regan*, 714 F.2d 171, 175 (D.C. Cir.1983).

Mrs. McDowell's APA claim is based on her allegations that the Defendants tampered with and refused to correct her personnel records because she had discovered and disclosed irregularities in certain weapons systems contracts. The APA claim is a nonconstitutional claim which Mrs. McDowell is attempting to assert under federal law. As noted in section IIIB of this Order, any claim that Mrs. McDowell may have in connection with alleged reprisals for her "whistle-blowing" activities are fully cognizable under both 5 C.F.R. § 771 and 5 U.S.C. § 2302(b)(8)(A). Thus, since the CSRA offers Mrs. McDowell a remedy for those claims she is attempting to assert under the APA, her APA claim is preempted by the remedial provisions of the CSRA. Moreover, to the extent Mrs. McDowell's

claims under the APA are based on allegations of employment discrimination because of her sex, such claims are actionable only under Title VII.

Nevertheless, citing *Gleason v. Malcom*, 718 F.2d 1044 (11th Cir.1983), Mrs. McDowell argues that the Eleventh Circuit has held that a federal employee may seek *equitable* relief under the APA for the type of claims asserted here. In *Gleason*, the Eleventh Circuit held that the plaintiff, a federal employee, could not maintain a *Bivens* action for the alleged violation of her employment rights since other remedial mechanisms were available to her. *Id.* at 1048. As an example of an alternative remedy, the court noted that the plaintiff could have brought a claim for reinstatement and back pay under the APA. *Id.* The court, however, never considered whether the remedial scheme set forth in the CSRA would have precluded the plaintiff from pursuing a claim under the APA. Since the *Gleason* court did not address this possibility, this court does not feel that the *Gleason* decision is binding precedent for the principle that a federal employee has an unrestricted right to pursue an APA claim for equitable relief in federal court. Moreover, if the court read *Gleason* to hold that a federal employee can assert a claim under the APA, then the court would be forced to ignore the Eleventh Circuit's statement in *Broughton* that the CSRA preempts challenges to personnel actions brought under federal law. *Broughton*, 861 F.2d at 642.

For these reasons, the court hereby GRANTS summary judgment to Defendants on Count Eight of the Amended Complaint.

## F. *The State Law Claims*

■ In Counts Nine through Thirteen of the Amended Complaint, Mrs. McDowell raises several claims under the statutory and common law of Georgia. These claims can be summarized as follows: trespass (Count Nine); interference with the right to pursue one's profession (Count Ten); negligent supervision (Count Eleven); intentional infliction of emotional distress (Count Twelve); and right to privacy (Count Thirteen). In Count Fourteen of the Amended Complaint, Plaintiff D.C. McDowell asserts a claim for loss of consortium. Defendants contend that this court has no jurisdiction to hear these state law claims.

In *Broughton, supra,* the Eleventh Circuit Court of Appeals considered whether an aggrieved federal employee could pursue state law claims for malicious interference with employment and conspiracy to interfere with employment. In *Broughton*, the plaintiff was demoted from his position as a foreman at the Naval Air Rework Facility in Pensacola, Florida for insubordination. The plaintiff appealed his demotion to the Merit System Protection Board's (MSPB) regional office pursuant to the procedures established by the CSRA. The MSPB held a hearing and concluded that the plaintiff's demotion was justified. The plaintiff did not seek judicial review of the Board's decision.

After the plaintiff unsuccessfully pursued his claim before the EEOC, he filed an action in a Florida state court alleging violations of Florida law. The defendants removed the case to federal court and moved to dismiss the state law claims. The district court denied the defendants' motion to dismiss.

The Eleventh Circuit, however, reversed the district court. The *Broughton* panel recognized that the CSRA establishes an extensive scheme of remedial procedures for federal employees who have been adversely affected by a personnel action. *Broughton*, 861 F.2d at 642. The court then considered whether the CSRA would preempt the plaintiff's state law claims for conspiracy and interference with employment. In deciding this question, the court stated that "[i]f adjudication of these state law claims obstructs the attainment of Congress's policy goal of unifying personnel challenges, then the claims are preempted." *Id.* at 643. The court then held that since the plaintiff's state law claims for conspiracy and tortious interference with employment obstructed the congressional policy to unify challenges to federal personnel ac-

tions, they were preempted by the CSRA. *Id.* at 644. The *Broughton* court found it important that the actions being challenged by the plaintiff's state law claims were actions that could have been challenged under the CSRA. *Id.* The court also noted that even though the plaintiff's claims alleged bad faith, federal employees can assert claims of bad faith in challenging personnel actions under the CSRA. *Id.* at 643.

Therefore, in deciding the preemption issue presented here, this court must consider whether the actions being challenged by Mrs. McDowell by her state law claims are actions that could have been challenged under the CSRA.[10]

Mrs. McDowell's claim that the Defendants interfered with her right to pursue her profession (Count Ten), is very similar to the malicious interference with employment claim raised by the plaintiff in *Broughton.* As noted by the Eleventh Circuit in *Broughton,* a claim for interference with employment can be asserted under 5 U.S.C.A. § 2302(b)(4), which prohibits a supervisor from "willfully obstruct[ing] any person with respect to such person's right to compete for employment." Therefore, Count Ten involves an action that could have been challenged under the CSRA.

Mrs. McDowell's claims for trespass (Count Nine), and interference with her right to privacy (Count Thirteen), both appear to be based on her allegation that the Defendants tampered with and falsely altered her personnel file and employment records. These actions prevented Mrs. McDowell from receiving a promotion to a GM–510–13 position. According to Mrs. McDowell, the Defendants took these retaliatory actions against her because she had complained of cost overruns and pricing irregularities arising out of certain weapons systems contracts entered into by the Defendants. As noted in section IIIB of this Order, Mrs. McDowell's claims of retaliation in connection with her "whistleblowing" activities are fully cognizable un-

der 5 U.S.C.A. § 2302(b)(8)(A). This subsection prohibits a supervisor from retaliating against an employee who has disclosed information concerning alleged mismanagement or waste of public funds. *Id.* Accordingly, Counts Nine and Thirteen involve actions that could have been challenged under the CSRA.

Count Eleven raises a claim against the Defendants for their failure to properly supervise others. According to Mrs. McDowell's allegation, the Defendants have a duty to properly supervise their employees so that these employees will not commit unlawful acts. Presumably, the alleged unlawful acts prevented Mrs. McDowell from receiving a promotion. Even if the actions of subordinates can be attributed to their supervisors, the court finds that this claim for wrongful supervision is cognizable under 5 U.S.C.A. § 2302(b)(4). Specifically, this subsection prohibits a supervisor from willfully obstructing an employee from competing for employment. If Mrs. McDowell's supervisors hired individuals who they knew would obstruct Mrs. McDowell in her attempt to obtain a promotion, or if her supervisors failed to take corrective measures once they knew an employee was obstructing Mrs. McDowell's opportunities for promotion, then Mrs. McDowell would have an action under subsection (b)(4). Therefore, Count Eleven challenges an action that could be pursued under the CSRA.

Finally, Count Twelve asserts a claim for intentional infliction of emotional distress. Mrs. McDowell's claim for emotional distress cannot be separated from her other claims since her alleged emotional distress is merely a result of all the other actions about which she is complaining. Mrs. McDowell claims she suffered emotional distress because she was retaliated against and refused a promotion. As noted above, her retaliation and promotion claims are cognizable under the CSRA. Since the retaliation and promotion claims are actionable under the CSRA, the fact that Mrs.

10. The court notes that the wrong Mrs. McDowell is complaining of is her failure to receive a promotion to a GM–510–13 position. Indeed, all of her allegations relate to the Defendants' failure to promote her. The denial of a promotion is a "personnel action" under the terms of the CSRA. 5 U.S.C.A. § 2302(a)(2)(A).

McDowell could not present a claim for intentional infliction of emotional distress will not alter the preclusive effect of the CSRA. *See Broughton*, 861 F.2d at 643 (fact that plaintiff could not assert a conspiracy claim under the CSRA would not change court's conclusion that the conspiracy claim could not be pursued in federal court). Accordingly, the court finds that Count Twelve is preempted by the CSRA.

Of course, D.C. McDowell is not a federal employee, and his claim for loss of consortium (Count Fourteen) is not preempted by the CSRA. Mr. McDowell may not proceed against Defendants Cheney and Rice in their official capacity, however, since these Defendants are protected by the doctrine of sovereign immunity. *See Barr v. Matteo*, 360 U.S. 564, 574, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959). Therefore, Mr. McDowell must pursue his claim only against one of the "unnamed" individual Defendants.

The court will carry the claim for loss of consortium with this case, and will allow Mr. McDowell to conduct discovery to find out the identity of the unnamed Defendants. The court will then allow Mr. McDowell to amend the Complaint to assert his claim for loss of consortium against these individual Defendants. If individual Defendants are named, the court will allow these Defendants to move for summary judgment on the basis of the recently-enacted Liability Reform Act (amending 28 U.S.C.A. § 2679). The court will then consider the impact the Liability Reform Act has on Mr. McDowell's claim.

For the reasons stated above, the court finds that the adjudication of Mrs. McDowell's state law claims in this court would obstruct the attainment of Congress's policy goal of unifying challenges to federal personnel actions. Consequently, Mrs. McDowell's state law claims are preempted by the CSRA. Although the court will allow Mr. McDowell's claim of loss of consortium to proceed, Mr. McDowell must add individual Defendants to this action after adequate discovery has been conducted if he wishes to pursue his claim. If individual Defendants are added, the court will reconsider the effect the Liability Reform Act has on Mr. McDowell's claim.

Accordingly, summary judgment is hereby GRANTED to the Defendants on Counts Nine through Thirteen of the Amended Complaint, and summary judgment is hereby DENIED to the Defendants on Count Fourteen of the Amended Complaint.

## IV. CONCLUSION

The court notes that this has been a long and arduous battle, especially on the part of Plaintiffs. Recognizing this, the court devoted more than the usual amount of time in considering each of Plaintiffs' claims. In view of all of the applicable decisions referred to in this order, however, the court is faced with the inescapable conclusion that most of Plaintiffs' claims must fail.

Accordingly, summary judgment is hereby GRANTED in favor of the Defendants on Counts Three through Thirteen of the Amended Complaint. Summary judgment is hereby DENIED to the Defendants on Counts One, Two, and Fourteen of the Amended Complaint.

SO ORDERED.