**Louis METSOPULOS, Jr., Plaintiff,**

v.

**Marvin RUNYON, Postmaster General, United States Postal Service, Defendant.**

Civil A. No. 94–1899(JCL).

United States District Court, D. New Jersey.

March 13, 1996.

Louis Metsopulos, East Orange, NJ, pro se.

Susan C. Cassell, Asst. U.S. Atty., United States Attorney's Office, Newark, NJ, for defendant.

## OPINION

LIFLAND, District Judge.

Defendant Marvin Runyon, the United States Postmaster General ("Postal Service"), moves to dismiss this action and for summary judgment, asserting that Louis Metsopulos' employment discrimination claims are either time-barred, untenable as a matter of law, or not cognizable by this Court given plaintiff's failure to exhaust his administrative remedies. Metsopulos, *pro se*, contends that he has exhausted his administrative remedies and that discovery will uncover factual evidence with which he could parry the Postal Service's summary judgment thrust. For reasons set forth below, the Court grants in part and denies in part the defendant's motions.

### Background

Until he retired on November 30, 1990, Louis Metsopulos, a white male of Greek ancestry, worked at the United States Postal Service as a postal operations officer, level 20, at the Newark, New Jersey facility. *See* Complaint ¶ 3; Highsmith Decl. at ¶ 3. In his Complaint filed on April 26, 1994, Metsopulos alleges that the Postal Service denied him various promotions due to illegal race, gender and age discrimination, as well as in retaliation for employment discrimination complaints he filed with the agency. The Court will now describe briefly each instance of alleged discrimination.

In May 1987, the Postal Service passed over Metsopulos when it filled the position of Postmaster, Rutherford, New Jersey, level 22. *See* Highsmith Decl. at ¶ 4; Def's Ex. B. Although interviewed for the position, Metsopulos was not recommended, prompting him to file a formal Equal Employment Opportunity ("EEO") complaint with the Postal Service. *See* Def's Ex. B.

A few months later, in February 1988, the Postal Service did not interview or select

plaintiff for the position of Postmaster, EAS 20, Springfield, New Jersey. *See* Highsmith Decl. at ¶ 6; Def's Ex. C. Metsopulos filed a formal agency complaint to protest this. *See* Def's Ex. C. On February 25, 1988, he also filed a formal EEO complaint alleging that he was treated unfairly in the Officer in Charge ("OIC") assignments. *See* Highsmith Decl. at ¶ 5; Def's Ex. F.

In October 1988, he was not selected for the position of Postmaster, Maplewood, New Jersey. *See* Highsmith Decl. at ¶ 9; Def's Ex. D. Metsopulos was interviewed for the position but was not recommended to the General Manager. *Id.* He then filed a formal EEO complaint concerning the Maplewood position.

On March 29, 1989, plaintiff was not selected for the position of Postmaster, Orange, New Jersey. *See* Highsmith Decl. at ¶ 8; Def's Ex. E. Metsopulos also filed a formal EEO complaint objecting to this employment decision. *See* Def's Ex. E.

After investigating and considering Metsopulos' allegations, the Postal Service found no discrimination and dismissed all five EEO complaints on June 18, 1992. *See* Def's Ex. G. He appealed the final agency disposition of these cases to the EEOC, which consolidated them as appeal number 01923724. *See* Def's Ex. H. The EEOC affirmed the final agency decision on February 26, 1993, *see id.*, a decision Metsopulos received on March 10, 1993. *See* Morgan Decl. He timely filed for reconsideration, which was denied on March 17, 1994. *See* Exhibit attached to Complaint.

In April 1988, Metsopulos and eight others applied to be Postmaster, Fort Lee, New Jersey. *See* Ferry Decl. at ¶ 4. He was not one of the six candidates interviewed by the review board. *Id.* at ¶ 7. Of the six people interviewed, five were white men and five were over 40 years old. Ultimately, no candidate was selected because the vacancy was cancelled and the position was reposted to a larger geographical area at a higher level. *Id.* at ¶¶ 8–9. Metsopulos once again filed a formal EEO complaint, which the agency dismissed without finding any discrimination, a finding upheld by the EEOC on March 28, 1994. *See* Def's Ex. T.

In June 1988, plaintiff was denied the position of Manager, Distribution Operations, level 23, in the North Jersey facility. *See* Highsmith Decl. at ¶ 7; Def's Ex. J. He filed a formal EEO complaint, which was dismissed with a finding of no discrimination on March 22, 1991. *See* Def's Ex. K. The matter, appealed to the EEOC as number 05930471, was disposed of at the administrative level on December 10, 1993 when the EEOC denied Metsopulos' request for reconsideration of the decision affirming the agency finding of no discrimination. *See* Def's Ex. L. He received that decision by certified mail on December 24, 1993. *See* Def's Ex. M.

Metsopulos next applied for the Montclair Postmaster position, level 22, in July 1989 along with 15 other applicants. *See* Rear Decl. at ¶ 4. Although he was one of 11 applicants interviewed for the position, plaintiff was neither recommended nor selected for the position because, the Postal Service contends, he was less qualified than those applicants currently serving as postmasters. According to the chairman of the review board, moreover, Metsopulos did not impress the board during the interview as much as did the recommended candidates. *See id.* at ¶¶ 6–9; Paige Aff. before the EEOC annexed as Def's Ex. O. He filed a formal EEO complaint, which the Postal Service found lacked factual support. *See* Def's Ex. P. Metsopulos appealed this determination to the EEOC, which affirmed the agency decision on September 14, 1993. *See* Def's Ex. Q. His request for reconsideration was denied one year later, on September 9, 1994. *See* Def's Ex. R.

Lastly, ¶ 18 of the Complaint lists eight other instances of alleged discrimination: 1) in June 1986, Metsopulos was denied an interview for the position of Manager, Logistics level 22; 2) after interviewing him on September 12, 1986, the defendant rejected his application for the Hoboken Postmaster position, level 22; 3) in June 1986, Metsopulos was denied the Manager, Distribution, level 23 position; 4) defendant denied his request to cover for 59 days the Tour Superintendent, level 22 position; 5) the Postal Service interviewed Metsopulos but, on May

20, 1987, rejected his bid to fill the Cranford Postmaster position, level 21; 6) on August 6, 1987, after interviewing Metsopulos, defendant rejected his application for the Westfield Postmaster position, level 21; 7) in July 1987, defendant denied his request for lateral consideration for the Cedar Grove Postmaster position, level 20; and 8) on October 5, 1990, defendant denied Metsopulos' request to be detailed to cover the Logistics Manager position, level 22. According to Postal Service records, Metsopulos never filed EEO complaints regarding any of these positions. *See* Highsmith Decl. at ¶ 10.

## Discussion

█ The Court recognizes its obligation to construe liberally *pro se* submissions to ensure that rules of pleading, sometimes thorns in the side of the most studied practitioner, do not subvert a litigant's opportunity for judicial remediation of wrongful conduct. *See Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). But a forgiving interpretation does not render immune from dismissal or summary judgment claims that lack procedural or factual viability. With this in mind, the Court turns to defendant's arguments for dismissal and summary judgment as to the various claims set forth in the Complaint.

## Motion to Dismiss Unexhausted Claims

### A. Title VII Claims

█ It is axiomatic that a plaintiff generally must timely file an Equal Employment Opportunity ("EEO") complaint before commencing a Title VII action. *See Brown v. General Services Administration,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). Although not an absolute jurisdictional prerequisite, *see Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), absent unusual circumstances, plaintiff's failure to exhaust means the complaint does not state a claim upon which relief can be granted. *See Hornsby v. United States Postal Service,* 787 F.2d 87, 90 (3d Cir.1986) ("A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC (or a state conciliation agency) for conciliation or resolution.").

█ In ¶ 18 of his Complaint, Metsopulos alleges that the Postal Service employed "continuous discrimination practices [at] the Newark Division ... [to deny him] upward mobility," Complaint at ¶ 18, enumerating eight positions for which he applied but was rejected. Defendant contends that the claims of discrimination contained in ¶ 18 have not been administratively exhausted and must therefore be dismissed for lack of subject matter jurisdiction. But since the exhaustion requirement is not "jurisdictional", the Court construes defendant's argument as a motion to dismiss for failure to state a claim under *Fed.R.Civ.P.* 12(b)(6). *See Brown v. Brown,* 528 F.Supp. 686, 687 (D.N.J.1981).

Postal Service records indicate that Metsopulos never filed an EEO complaint concerning any of the allegedly discriminatory decisions listed in ¶ 18. *See* Highsmith Decl. at ¶ 10. Nothing plaintiff submits rebuts this evidence, and in fact the EEOC's March 17, 1994 denial of Metsopulos' request for reconsideration also suggests that he did not properly pursue administrative relief regarding these miscellaneous claims:

> Appellant apparently also alleged discrimination with regard to nearly a dozen other incidents, including those involving the PRCs for the following New Jersey facilities: Hoboken, Cranford, Westfield, Cedar Grove, Fort Lee (twice), Kearny and Jersey City. By letter dated March 15, 1991, the agency acknowledged two letters from appellant, dated February 8, 1990, and April 16, 1990, wherein he respectively requested a hearing by an EEOC Administrative Judge (AJ), and complained that the EEO Investigator did not investigate his charges of a 'pattern and practice of continued discrimination.' The agency wrote to appellant, regarding his apparent nonselections for the above facilities with the exception of Fort Lee, that he apparently had neither requested nor received pre-complaint EEO counseling. In its let-

ter, the agency advised appellant that he would need to request EEO counseling.[1] *See* EEOC Denial of Request to Reconsider Appeal No. 01923724 at 3 n. 3, annexed as an exhibit to the Complaint.

Metsopulos responds that these acts were part of the Postal Service's "continuing violation" of his rights. The Third Circuit recently reiterated that the "continuing violation" theory is a judicially fashioned equitable exception to the timely filing requirement. "Under this theory, the plaintiff may pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995) (citing *Bronze Shields, Inc. v. New Jersey Dept. of Civ. Serv.*, 667 F.2d 1074, 1081 (3d Cir.1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982)). To establish that a claim falls within the "continuing violation" theory, the plaintiff must demonstrate that at least one act occurred within the filing period, *see United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) ("The crucial question is whether any *present* violation exists.") (emphasis in original), and that the discrimination is more than isolated or sporadic. *See Jewett v. International Tel. and Tel. Corp.*, 653 F.2d 89, 91 (3d Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981).

Metsopulos' argument essentially raises the question of whether the "continuing violation" doctrine has any impact on Title VII's explicit requirement that a plaintiff exhaust his administrative remedies before filing a civil action. *See* 42 U.S.C. § 2000e–16(c) (federal employees); 42 U.S.C. § 2000e–5(e) and (f) (private sector employees). Conceding that the precise import of the doctrine is somewhat elusive,[2] this Court holds that the "continuing violation" theory does not excuse the failure to exhaust administrative remedies. As with any case brought under Title VII, before filing a civil action based on conduct that is allegedly part of a "continuing violation", the plaintiff must present the agency or EEOC with an opportunity to investigate, conciliate and/or remedy the problem. The "continuing violation" theory merely affects the time available to a complainant to file the charge with the agency or EEOC, excusing tardy claims when those claims result from a "continuing violation" of federal anti-discrimination law. Metsopulos never properly filed any administrative claim.

While courts must construe employment discrimination statutes liberally in light of their humanitarian purpose, *see Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir.1994), Congress' other vital policy goals should not be subverted under the guise of a liberal interpretation of Title VII. Here, a contrary rule would un-

---

1. Although the charging party in a private sector case need not complain to the allegedly offending employer, Congress has mandated that federal employees complain in the first instance to the agency alleged to have violated Title VII. 29 C.F.R. § 1614.105(a) (1995), predecessors of which were effective at the time of the events referred to in ¶ 18, directs that "[a]ggrieved persons who believe they have been discriminated against ... must consult a counselor prior to filing a complaint [with the agency] in order to try to informally resolve the matter."

2. Reviewing a similar record, the court in *Johnson v. Frank*, 828 F.Supp. 1143, 1150 (S.D.N.Y. 1993), held that the continuing violation theory was factually inapposite: "[the continuing violation] doctrine, which carves out an exception to the exhaustion requirement, applies when the discriminatory employment practice manifests itself as a series of related acts over time, rather

than as a series of discrete acts." Although this Court agrees with *Johnson*'s general formulation, it cannot embrace the view that the continuing violation doctrine excuses the exhaustion requirement. *McDowell v. Cheney*, 718 F.Supp. 1531 (M.D.Ga.1989), is another decision that seems to misapprehend the effect of the "continuing violation" doctrine. In that case, the court denied summary judgment as to claims that had been presented, albeit untimely, to the agency in a formal complaint. The court premised its decision upon the triable issues of fact that existed as to whether the claims were part of a "continuing violation" that would excuse plaintiff's "failure to exhaust available administrative remedies." *Id.* at 1539. But as this Court understands the law, it would have been more accurate for *McDowell* to state that the "continuing violation" theory excused not failure to exhaust but the tardy filing of the administrative claim.

dermine the exhaustion requirement, an essential cog in the statutory machinery Title VII constructed to remedy workplace discrimination. *Cf. Kizas v. Webster,* 707 F.2d 524, 544–45 (D.C.Cir.1983) (Because Congress has unambiguously directed federal employment discrimination complainants to proceed first before the agency charged with discrimination, we have grave doubts whether any futility doctrine can be stretched to sanction court adjudication of a Title VII action when no party to the action has ever filed an initial charge with the agency."), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

As Congress understood, exhaustion affords an opportunity for extra-judicial resolution of employment grievances, preventing lawsuits that "would unnecessarily burden courts with cases that might be terminated successfully by mediation or conciliation." *Purtill v. Harris,* 658 F.2d 134, 138 (3d Cir. 1981), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983). Indeed, an asserted "continuing violation" probably cries out louder for pursuit of agency relief, so that the alleged violation can be addressed and nipped in the bud, if possible, without recourse to time-consuming litigation. Also important is the expertise brought to bear by the investigators who are familiar with the process by which different positions are filled in agencies such as the Postal Service. Lastly, exhaustion helps limit the breadth of the district court action since a lawsuit's parameters " 'are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.... '" *Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir.1984) (citations omitted) (quoting *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398–99 (3d Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977)).

It is also by no means apparent that the "continuing violation" doctrine applies in cases such as this that allege serial denial of promotions by reviewing committees comprised of different members. *See Erdmann v. Bd. of Educ. Union County Reg. High School,* 541 F.Supp. 388, 392 (D.N.J.1982) ("Repeated denials of employment or pro-

motion to an individual applicant ... do not constitute a continuing violation unless the denials were based upon some allegedly discriminatory practice, policy or procedure utilized by the employer in making its employment decisions...."); *Johnson v. Frank,* 828 F.Supp. 1143, 1150 (S.D.N.Y.1993) ("Serial decisions not to promote do not in themselves give rise to a continuing violation.").

For all of the foregoing reasons, the Court will dismiss the unexhausted Title VII claims enumerated in ¶ 18 of the Complaint.

**B. ADEA Claims**

 The Age Discrimination in Employment Act permits federal employees to bring civil actions on unexhausted claims, but the aggrieved employee must give the EEOC notice of his intent to sue within 180 days of the alleged discriminatory action. *See* 29 U.S.C. § 633a(d); *Stevens v. Dept. of Treasury,* 500 U.S. 1, 7, 111 S.Ct. 1562, 1566, 114 L.Ed.2d 1 (1991). The Court will dismiss the age discrimination claims as well since there is no record evidence that Metsopulos provided the requisite notice regarding the claims set forth in ¶ 18.

**Summary Judgment as to the Exhausted Claims**

 Summary judgment is not a disfavored procedural shortcut, but rather an essential thread in the fabric of the Federal Rules that eliminates unfounded claims without recourse to a costly and lengthy trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). "This burden ... may be discharged by 'showing' ... that there is an absence of evidence to support

the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. at 2554. All evidence submitted must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). No issue for trial exists unless the nonmoving party can demonstrate sufficient evidence favoring the nonmoving party such that a reasonable jury could return a verdict in that party's favor. *See id.* at 249, 106 S.Ct. at 2510.

### A. The Springfield, Rutherford, Maplewood, Orange, OIC, and Distribution Manager Positions

Defendant contends that even if the Postal Service illegally denied Metsopulos promotion to the foregoing positions, analysis of the uncontroverted record reveals that his claims are barred by the statute of limitations. It argues that under both Title VII—which governs Metsopulos' gender discrimination, ancestry discrimination and reprisal claims—and the Age Discrimination in Employment Act ("ADEA"), a federal employee must sue within 30 days of receiving notice of the EEOC's final action. Since Metsopulos waited longer than 30 days before commencing this action, defendant contends, these claims are untimely. The Postal Service misconceives the law.

■ On November 21, 1991, President Bush signed the Civil Rights Act of 1991, Pub.L. 102–166, which, *inter alia,* expanded from 30 to 90 days the time within which an aggrieved federal employee must file a Title VII action. The limitations period begins upon receiving notice of the agency or EEOC's final administrative disposition of an employee's complaint. *See* 42 U.S.C. § 2000e–16(c). Even where, as here, the alleged discrimination occurred before the 1991 Act's effective date, the amended 90–day statute of limitations applies to suits initiated after November 21, 1991. *See Smith v. ZENECA, Inc.,* 820 F.Supp. 831, 833–834 (D.Del.1993), *aff'd,* 37 F.3d 1489 (3d Cir.1994); *Vernon v. Cassadaga Valley Central School District,* 49 F.3d 886, 889 (2d Cir.1995).[3]

■ But while Congress has twice addressed the limitations period that applies in federal employee suits arising under Title VII, it has never prescribed what limitations period applies in an age-discrimination suit initiated after a federal employee has exhausted his administrative remedies.[4] The Court must therefore "borrow" an appropriate limitations period from an analogous state or federal provision. *See Stevens,* 500 U.S. at 7, 111 S.Ct. at 1566. As in the majority of other circuits that have addressed this question, courts within the Third Circuit borrow the 90–day limitations period from Title VII. *See Casid v. United States Dept. of Veterans Affairs,* 1992 WL 247219 (E.D.Pa.), *aff'd,* 998 F.2d 1002 (3d Cir.1993). *See also Edwards v. Shalala,* 64 F.3d 601 (11th Cir.1995); *Long v. Frank,* 22 F.3d 54 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 938, 130 L.Ed.2d 883 (1995); *Jones v. Runyon,* 32 F.3d 1454 (10th Cir.1994); *Lavery v. Marsh,* 918 F.2d 1022 (1st Cir.1990).

---

**3.** Although the 1991 Civil Rights Act does not apply retroactively, *see Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), application of the 90–day limitations period to claims that accrued before passage of the Act is not actually retroactive. The action regulated by the amended limitations period—the filing of a lawsuit—occurs after passage of the Act.

**4.** The ADEA permits a federal employee to bring suit in federal court in the first instance, or to pursue administrative remedies before the EEOC, with the option to sue in federal court if dissatisfied with the Commission's disposition. *See* 29 U.S.C. § 633a(b) and (c). As discussed above, before bringing a civil action directly to federal court, the federal employee must give the EEOC notice of intent to sue within 180 days of the alleged discriminatory conduct, and then must wait 30 days before filing the suit. *See* § 633a(d).

*But see Lubniewski v. Lehman*, 891 F.2d 216 (9th Cir.1989). Thus, Metsopulos' discrimination claims concerning the Springfield, Rutherford, Maplewood, Orange, OIC, and Distribution Manager Positions are all time-barred unless filed within 90 days of his receiving the EEOC's final decision. In cases alleging discrimination in federal employment, where reargument is timely requested, finality occurs when the request for reconsideration is granted or denied. *See* 29 C.F.R. § 1614.405(b)(1) (Commission decision is final unless "either party files a timely request for reconsideration pursuant to § 1614.407 . . . .").[5] *But cf. McCray v. Corry Manufacturing Company*, 61 F.3d 224, 225 (3d Cir.1995) (In a suit alleging age discrimination by a *private sector employer*, where no EEOC regulation was on point, "[w]e hold that the mere filing of a request for reconsideration does not toll the ninety day period for filing an ADEA civil action . . . .").

 Applying these principles to the facts of this case, the Court concludes that just one of Metsopulos' claims is time-barred. According to the undisputed record, the EEOC consolidated his Rutherford, Springfield, Maplewood, Orange and OIC complaints. *See* Def's Ex. H. In a decision plaintiff received on March 10, 1993, the Commission affirmed the Postal Service's finding of non-discrimination as to all five complaints. However, plaintiff timely requested reconsideration of the decision, a request the EEOC denied on March 17, 1994.

Since he filed his Complaint with this Court on April 26, 1994, within 90 days of the EEOC's final action, the statute of limitations does not bar Metsopulos' claims that pertain to the Rutherford, Springfield, Maplewood, and Orange positions, and to OIC assignments.[6] The Court therefore denies summary judgment as to these claims.

But the record does indicate that Metsopulos' claim regarding his application for Distribution Manager, level 23 is untimely. After the Postal Service dismissed his formal EEO complaint, plaintiff appealed the matter to the EEOC (no. 05930471), which affirmed the agency decision. The matter was finally disposed of at the administrative level when the EEOC denied Metsopulos' request for reconsideration, a decision he received by certified mail on December 24, 1993. Since the 90-day statute of limitations began to run upon receipt, by April 26, 1994 the statute had run on Metsopulos' claim that he was unlawfully denied a promotion to Distribution Manager, level 23.

 Like the exhaustion requirement, statutory filing deadlines applicable to federal employee suits are not jurisdictional but may be equitably tolled in appropriate circumstances. *See Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Injecting equitable considerations into the analysis accords with the Court's goal "of interpreting humanitarian legislation in a humane and commonsensical manner so as to prevent unnecessarily harsh

**5.** Prior to the EEOC regulation, adopted in 1992, the Circuits had split on the question of whether a request for reconsideration of an EEOC decision rendered the first disposition non-final. *Compare Nordell v. Heckler*, 749 F.2d 47 (D.C.Cir. 1984) (denial of reconsideration constitutes final action) and *Donaldson v. T.V.A.*, 759 F.2d 535 (6th Cir.1985) (same) *with Mahroom v. Defense Language Institute*, 732 F.2d 1439, 1440 (9th Cir.1984) (denial by Commission was final action "unaltered by a request for reconsideration") and *Birch v. Lehman*, 677 F.2d 1006 (4th Cir. 1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 725, 74 L.Ed.2d 951 (1983) (same). In adopting the approach taken by the D.C. and Sixth Circuits, the EEOC has interpreted the anti-discrimination statutes consistently with federal law in related contexts. For example, the rules governing review of federal court decisions operate similarly, as a timely request for judicial reconsideration automatically extends the time for filing notice of

appeal or a petition for writ of certiorari. *See Fed.R.App.P.* 4(a)(4) (appeal from district court judgment); *United States v. Dieter*, 429 U.S. 6, 8, 97 S.Ct. 18, 19, 50 L.Ed.2d 8 (1976) (Supreme Court review). And in other administrative law contexts, "the federal law is clear that a pending petition for agency reconsideration, timely filed, renders the underlying agency action nonfinal. . . . Thus, the statute of limitations for judicial review is tolled until the agency decides the petition for reconsideration." *Virgin Islands Conservation Soc., Inc. v. Virgin Islands Bd. of Land Use Appeals*, 881 F.2d 28, 31 (3d Cir.1989).

**6.** Metsopulos claims he received the EEOC's denial of reconsideration on April 1, 1994. Whether this is true is irrelevant since he filed his Complaint well within the 90-day limitations period, calculated either from when the decision was rendered or received.

results in particular cases." *Oshiver*, 38 F.3d at 1387. There are three principal, although not exclusive, situations that may justify equitable tolling: 1) where the defendant has affirmatively misled the plaintiff regarding plaintiff's cause of action; 2) where something extraordinary had impeded the plaintiff from asserting his rights; or 3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *See id.*

 The Court concludes that Metsopulos was not misled or impeded in his attempt to prosecute the Distribution Manager, level 23 claim. He simply forfeited his rights, perhaps an unfortunate occurrence, but certainly not an event that arouses the equitable conscience of this Court. Nor does the Court consider plaintiff's "continuing violation" argument applicable since the government does not dispute that Metsopulos timely filed his charge with the agency and EEOC.[7] Accordingly, the Court grants summary judgment dismissing Metsopulos' claim that he was discriminatorily denied a promotion to Distribution Manager, level 23.

### B. Fort Lee Position

 As explained in the "Background" section, in April 1988, Metsopulos and eight others applied to be Postmaster, Fort Lee, New Jersey. *See* Ferry Decl. at ¶ 4. He was not one of the six candidates interviewed by the review board. *Id.* at ¶ 7. Of the six people interviewed, five were white men and five were over 40 years old. Ultimately, no candidate was selected because the vacancy was cancelled and the position was reposted to a larger geographical area at a higher level position. *Id.* at ¶¶ 8–9. The record is

clear, therefore, that neither Metsopulos nor anyone else could have obtained the Fort Lee position since the listing was cancelled and its responsibilities later folded into a different position.[8] As a matter of law and logic, defendant could not illegally deny Metsopulos a position that did not exist. The Postal Service is entitled to summary judgment dismissing this claim as well.

### C. Montclair Postmaster Position

Lastly, defendant asserts that there is no genuine issue of fact as to the Postal Service's denial of the Montclair Postmaster position for legitimate business reasons unrelated to age, gender, ancestry, or propensity to file EEO complaints. Plaintiff contends that he cannot respond adequately to this motion without additional discovery.

Intentional discrimination cases brought under Title VII and the ADEA present difficult problems of proof since the essential factual inquiry focuses on the defendant's state of mind and its motivation, amorphous concepts that often defy clear and neat proof. Rare indeed is the case where plaintiff can present to the factfinder the proverbial "smoking gun", direct evidence demonstrating that an employer rendered a decision based on illegitimate criteria. To deal with this problem, the Supreme Court uses shifting burdens of production and proof to narrow and crystallize the factfinder's focus in a case where the plaintiff strives to prove intentional discrimination by circumstantial, not direct, evidence. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450

---

7. The "continuing violation" theory extends a complainant's time to file charges with an administrative agency; it does not alter the time in which one must file a civil action in federal court. *See Scott v. St. Paul Postal Service*, 720 F.2d 524, 525 (8th Cir.1983) (per curiam) ("A claim of continuing discrimination does not in any way affect the complainant's obligation to file an action in district court within thirty [now ninety] days of receipt of the agency's final decision disposing of his complaint."), *cert. denied*, 465 U.S. 1083, 104 S.Ct. 1453, 79 L.Ed.2d 770 (1984); *Martin v. Frank*, 788 F.Supp. 821 (D.Del. 1992).

8. Attached to Metsopulos' opposition brief is the unsworn statement of Harold Waldron. Referring to the reposting of the Fort Lee Postmaster position, Waldron believes "in order to get around the problem of rescinding the first selection process, it was decided to upgrade the level of the office from 21 to 22. This would allow for a new selection board to be selected." This unsworn statement does not create a triable issue of fact as to whether some illegitimate reason impelled the Postal Service to repost the position. Moreover, the Vacancy Announcement was cancelled *after* Metsopulos received his notice of rejection. *See* Def's Ex. T at 5 n. 8 (EEOC denial of Reconsideration).

U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the Supreme Court's burden-shifting analysis, the plaintiff first has the burden of proving a *prima facie* case by a preponderance of the evidence. Plaintiff's successful demonstration of a *prima facie* case raises a rebuttable presumption of discrimination, and compels the defendant to articulate a legitimate, nondiscriminatory justification for its action lest judgment be entered against it. If the defendant tenders a legitimate rationale for its decision, the presumption disappears from the case and plaintiff must prove by a preponderance of the evidence that the articulated justification is a pretext for the employer's true *ratio decidendi*—illegal discrimination. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). Thus, while the intermediate burden of production can shift to the defendant, the ultimate burden of persuading the factfinder that defendant intentionally discriminated against the plaintiff always remains with the plaintiff. Regarding the plaintiff's ultimate burden, *St. Mary's* recently made clear that "[i]t is not enough … to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.* at 519, 113 S.Ct. at 2754 (emphasis in original).

■ Apparently conceding for purposes of this motion that Metsopulos has made out a *prima facie* case of discrimination and retaliation regarding the Montclair Postmaster position,[9] the Postal Service maintains that there is no factual basis for disputing the legitimate, non-discriminatory explanation it offers for its employment decision. Once again, the Court agrees.

■ Defendant submits a declaration and affidavit that explain how it filled the Montclair position. Metsopulos, along with 16 other applicants, applied for the position in July 1989. A review panel interviewed plaintiff and 10 other applicants, and ultimately recommended three individuals. *See* Rear Decl. at ¶¶ 5–7. Of the three recommended candidates, one had been serving as a level 21 postmaster for four years, another as a level 21 postmaster for two years and a level 20 postmaster for five years, and the third had been a level 20 postmaster for four years. *See* Def's Ex. U. Metsopulos had not served as a postmaster, rendering him less qualified for the position. *See* Rear Decl. at ¶¶ 8–9. Additionally, his interview responses did not impress the review panel. *See id.*; Paige EEO Investigative Affidavit, annexed as Def's Ex. O. Thus, there is ample evidence to support the Postal Service's contention that Metsopulos was denied the Montclair position because better candidates were available.

■ Since the defendant tenders a legitimate, non-discriminatory rationale for its employment decision, the rebuttable presumption of discrimination Metsopulos receives after making out his *prima facie* case evaporates, and he bears the ultimate burden of persuading the trier of fact that the Postal Service failed to promote him because of his age, gender and ancestry, and as a reprisal for past EEO complaints. *See Hicks*, 509 U.S. at 519, 113 S.Ct. at 2754. To withstand a motion for summary judgment, Metsopulos must "either (i) discredit[ ] the proffered reasons, either circumstantially or directly, or (ii) adduce[ ] evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994). *See also Chipollini v. Spencer*

---

9. To make out a *prima facie* case of age, gender, or ancestry discrimination under Title VII and the ADEA, Metsopulos must establish by a preponderance of the evidence that: 1) he was a member of a protected class; 2) he was qualified for the position in question; 3) he was not chosen despite his qualifications; and 4) that others not in his protected class were treated differently. *See McDonnell Douglas*, 411 U.S. at 802–804, 93 S.Ct. at 1824–1825. To make out a

*prima facie* case of retaliation, Metsopulos must establish that: 1) he was qualified for the position; 2) he engaged in a statutorily protected activity; 3) the employer took an adverse personnel action; and 4) a causal connection existed between the action and plaintiff's participation in the protected activity. *See Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C.Cir.1985); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980).

*Gifts, Inc.,* 814 F.2d 893, 899 (3d Cir.1987), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Metsopulos points to no direct evidence that either discrimination or retaliation was more likely than not the reason he was denied the Montclair position.

Nor does he adduce evidence as to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.' " *Fuentes,* 32 F.3d at 765 (citations omitted and changes and emphasis in original). *See also Sorba v. Pennsylvania Drilling Co.,* 821 F.2d 200, 203 (3d Cir.1987), *cert. denied,* 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988). Metsopulos merely attaches to his brief a hodge-podge of statements, most unsworn, which do not bear any relationship to his allegations regarding the process by which the defendant filled the Montclair position.

 Plaintiff contends that discovery will yield evidence to support his claim, an argument this Court construes as a *Fed.R.Civ.P.* 56(f) application. Although the Court recognizes the impediments a *pro se* litigant unfamiliar with the discovery process confronts, the time for discovery expired months ago and Metsopulos never indicated to the magistrate that the defendant had frustrated his opportunity for discovery.[10] Because Metsopulos has repeatedly demonstrated an ability to communicate with this Court throughout his prosecution of this action, the Court denies the 56(f) application and holds him to his legal obligation to adduce record evidence demonstrating the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [Postal Service's] proffered legitimate reasons for its action...." *Fuentes,* 32 F.3d at 765. Metsopulos has not met his burden, which compels this Court to grant defendant summary judgment on this claim as well.

**10.** The December 19, 1994 Scheduling Order stated that discovery was to be completed before

### Conclusion

For the foregoing reasons, the Court grants defendant summary judgment dismissing the claims alleging discriminatory failure to promote to the Fort Lee and Montclair Postmaster positions and the Distribution Manager, level 23 position. Also granted is the Postal Service's 12(b)(6) motion to dismiss the claims of discrimination alleged in ¶ 18 of the Complaint. The Court denies summary judgment as to the claims alleging discriminatory failure to promote to the Springfield, Rutherford, Maplewood, Orange, and OIC positions.

May 21, 1995. *See* Scheduling Order at ¶ 1.